526 A.2d 398

**COMMONWEALTH of Pennsylvania**

v.

**John M. VERILLA, Appellant.**

Superior Court of Pennsylvania.

Argued Jan. 21, 1987.

Filed May 18, 1987.

388

Russell J. Heiple and Kevin J. Rozich, Johnstown, for appellant.

Lloyd G. Parry, Philadelphia, for Commonwealth, appellee.

Before BROSKY, DEL SOLE and CERCONE, JJ.

DEL SOLE, Judge:

Presented before us for our review are two consolidated appeals. The appeal at No. 952 Pittsburgh 1986 is taken from the Judgment of Sentence imposed following Appellant's convictions for first degree murder, kidnapping, conspiracy to commit murder and conspiracy to commit kidnapping. At No. 1149 Pittsburgh 1986, Appellant appeals an order which assessed him for the counsel fees and costs incurred by the County of Cambria for his court appointed representation. Because the facts and issues underlying

each appeal are distinct, we will treat the appeals separately.

## APPEAL AT 952 PITTSBURGH 1986

Following a jury trial, Appellant was convicted of charges associated with the kidnapping and murder of John Clark. Timely post-trial motions were filed on Appellant's behalf and a supplemental motion was later filed, all of which were denied by the trial court. Appellant was sentenced to serve a life term for his conviction of first degree murder and he received three sentences of 10–20 years incarceration for the crimes of kidnapping, conspiracy to commit murder and conspiracy to commit kidnapping. These 10–20 year terms were all ordered to be served concurrently with Appellant's life term.

On appeal Appellant raises ten issues in his statement of questions involved.[1]

1. These issues are listed by Appellant as follows:
   1. Whether a change of venue or venire should have been granted due to the excessive and prejudicial amount of pre-trial publicity;
   2. Whether the defense should have been permitted to impeach Vincent Carraciola's character by use of his prior conviction for sodomy;
   3. Whether the Commonwealth should have been precluded from using the testimony of Kenneth Russler due to its failure to timely provide the defense counsel with his eyewitness status and testimony;
   4. Whether independent evidence of the alleged conspiracy or conspiracies should have been required prior to allowance of testimony pursuant to the co-conspirator exception to the hearsay rule;
   5. Whether the defense should have been permitted to call Judith Fleegle as a witness on the basis that the benefit to the Appellant would outweigh her privilege against self-incrimination; or that the immunities granted to Judith Fleegle would have prevented any legal incrimination against her from her testimony at Appellant's trial;
   6. Whether the arrest for perjury of defense witnesses, Burket and Noyer, during the course of the trial constituted prosecutorial misconduct in that its purpose was to have a chilling effect on other defense witnesses' willingness to come forth and/or testify truthfully for the Appellant;
   7. Whether the court's failure to sustain Appellant's motion to quash the indictments charging kidnapping and conspiracy to commit kidnapping and murder unfairly prejudiced Appellant's trial on the charge of murder by allowing co-conspirator hearsay testimony

■ Issue number eight, which addresses the psychological examination of a witness was raised in a pre-trial motion but was not reasserted in Appellant's post-trial motions. Accordingly, we deem this issue waived and decline to address its merits. Pa.R.Crim.P. Rule 1123, 42 Pa.C.S.A.; *Commonwealth v. Gravely*, 486 Pa. 194, 404 A.2d 1296 (1979).

Likewise, Appellant's issue number nine has not been properly preserved for our consideration. As recited previously, Appellant filed timely post-trial motions within ten days of October 3, 1984, the date his guilty verdict was returned. Appellant's motion included the following language: "THAT DEFENDANT reserves the right to supplement and add to the above list of Motions with additional reasons within a reasonable time following receipt of the transcribed record in this case." On November 4, 1984, Appellant filed a document entitled "Amended Motion in Arrest of Judgment". The sole reason for requesting relief contained in the amended motion was the claim Appellant now presents as issue number nine. Issue nine concerns the presentment authority of the Investigating Grand Jury and does not set forth a claim relative to Appellant's request for the transcript.

■ Pennsylvania Rule of Criminal Procedure 1123(a) provides in part: "If the grounds do not require a transcript neither the *filing*, argument, nor hearing of post-verdict

and permitting the jury to hear testimony charging Appellant with the other crimes;
8. Whether the court erred in failing to order a psychological examination of Vincent Carraciola;
9. Whether the court lacked jurisdiction over the crimes charged against Appellant because the Blair County investigating Grand Jury's presentment authority was limited to persons who appear to have committed crimes within the county;
10. Whether Judgment should be arrested on the convictions of kidnapping and conspiracy to commit kidnapping and murder as the period of limitations had expired prior to the indictment.
We caution Appellant that his Brief violates the provisions of Pa.R. A.P., rule 2116 by listing his Statement of Questions on more than one page. Appellant is warned that such violation of this rule will not be tolerated in the future. *Commonwealth v. Bell*, 328 Pa.Super. 35, 476 A.2d 439 (1984).

motions shall be delayed for lack of transcript of the notes of testimony." (emphasis added). As a transcript was not necessary to a just determination of Appellant's amended motion, we conclude the amended motion was not timely filed and the issue contained therein was not properly preserved for appellate review. *See also: Commonwealth v. Gregory,* 309 Pa.Super. 529, 455 A.2d 1210 (1983).

Turning to the remaining issues, we have determined after study of the record that the assertions of Appellant found in issues one through seven are, indeed, meritless. Moreover, we find that the able and comprehensive opinion of the distinguished Judge Caram J. Abood has carefully addressed and properly rejected each of these contentions. We only wish to expound upon the discussion presented by the trial court on issue number three.

The third claim of error submitted by Appellant alleges that defense counsel was not timely provided with the statements of Kenny Russler and, therefore, Mr. Russler should not have been permitted to testify on behalf of the Commonwealth.

The trial court properly found that the Commonwealth was not tardy in providing Appellant with Mr. Russler's name and a copy of his statement. This statement, in which Mr. Russler implicated Appellant, was elicited from Mr. Russler only shortly before trial. Appellant's counsel conceded that the defense was provided with the information within the 24 hours, in the first day of jury selection. Appellant argues, however, that notwithstanding this disclosure he should have been previously provided with a copy of the testimony Mr. Russler gave before the Grand Jury since such testimony was inculpatory.

We disagree with Appellant's characterization of the testimony Mr. Russler gave before the Grand Jury and find that Appellant has in no way been harmed by the Commonwealth's actions. As noted by the trial court, Appellant's counsel was provided with a copy of the Grand Jury testimony at the beginning of voir dire and Appellant's counsel did attempt to impeach Mr. Russler with the testimony he

had previously given the Grand Jury. The Commonwealth reasons that since Appellant's counsel made no request for a continuance he must have had ample time to examine Mr. Russler's testimony and we concur with this logic. Further, Mr. Russler recounted at trial the testimony he gave before the Grand Jury; the substance of which was that he could not recall what happened at a meeting between Appellant, the decedent, and another party the day before the murder. We conclude that Mr. Russler's non-recollection of an event was not exculpatory and for these reasons we find further support for the trial court's rejection of Appellant's claim.

■ The remaining issue challenges whether Appellant's motion to quash the information on his charges of kidnapping, conspiracy to commit murder and conspiracy to commit kidnapping should have been granted since such prosecutions were time-barred. We are constrained to agree with Appellant's contention.

John Clark was kidnapped and murdered on January 23, 1979. A Grand Jury did not convene to consider the instant matter until October of 1981 and this body did not issue a presentment until June of 1983. The relevant statute which provided the appropriate limitation of time read: "Except as otherwise provided, a prosecution for an offense other than murder must be commenced within two years after it is committed." 42 Pa.C.S.A. § 5552(a), 1976, July 9, P.L. 586, No. 412, [effective June 27, 1978][2] Commencement is defined for purposes of this statute as "... when an indictment is found or an information ... is issued, if such warrant, summons or citation is executed without unreasonable delay". 42 Pa.C.S.A. § 5552(e).

The Commonwealth does not dispute the fact that the prosecution was not commenced in this case until more than two years after the kidnapping and murder of John Clark. However, it maintains that under 42 Pa.C.S.A. § 5552(d) the

2. 42 Pa.C.S.A. § 5552 was amended December 14, 1984, effective in 60 days, and it now provides no limitation period for the crime of conspiracy to commit murder if a murder results.

beginning of the tolling period should not be the date of Mr. Clark's kidnapping and murder. We cannot adopt this interpretation of the statute.

42 Pa.C.S.A. § 5552(d) provides:

Commission of offense—An offense is committed either when every element occurs, or, if a legislative purpose to prohibit a continuing course of conduct plainly appears, at the time when the course of conduct or the complicity of the defendant therein is terminated. Time starts to run on the day after the offense is committed.

The Commonwealth certified this case as one in which a continuing course of conduct appears under § 5552(d). While such a claim may have arguable merit for the two conspiracy charges, this reasoning is clearly inapplicable to the kidnapping charge. *See: Commonwealth v. Volk*, 298 Pa.Super. 294, 444 A.2d 1182 (1982), (where the prosecution of a conspiracy that was renewed repeatedly by fraudulently obtaining public assistance funds could be prosecuted at any time within two years after the commission of the last offense). The kidnapping herein occurred on January 23, 1978 and the statute of limitations began to run on this charge the next day.

Regarding the conspiracy charges the Cross Reference listed under § 5552 states: "Criminal conspiracy, duration of offense for purposes of subsec. (d) of this section see 18 Pa.C.S.A. § 903(g)." Turning to the section to which reference was made, one finds:

Duration of conspiracy—For purposes of 42 Pa.C.S. § 5552(d) (relating to commission of offense):

(1) conspiracy is a continuing course of conduct which terminates when the crime or crimes which are its object are committed or the agreement that they be committed is abandoned by the defendant and by those with whom he conspired;

(2) such abandonment is presumed if neither the defendant nor any one with whom he conspired does any overt act in pursuance of the conspiracy during the applicable period of limitation; and

(3) if an individual abandons the agreement, the conspiracy is terminated as to him only if and when he advises those with whom he conspired of his abandonment or he informs the law enforcement authorities of the existence of the conspiracy and of his participation therein.

18 Pa.C.S.A. § 903(g).

Subsections (2) and (3) are clearly inapplicable to the instant case since the object of the conspiracy was not abandoned. Subsection (1) holds that although a conspiracy is a continuing course of conduct such conduct "terminates when the crime or crimes which are its object are committed". 18 Pa.C.S.A. § 903(g)(1). In the case *sub judice* the crimes which were the objects of the conspiracy were committed on January 23, 1978, more than two years before the prosecution of Appellant was commenced. There is no evidence in the record which would expand the scope of the conspiratorial agreement well beyond January 23, 1978, the date when its principal objective was accomplished. *See: Commonwealth v. Evans*, 489 Pa. 85, 92–93, 413 A.2d 1025 (1980).

In view of the above analysis, we conclude that Appellant's convictions for kidnapping, conspiracy to commit murder and conspiracy to commit kidnapping must be vacated since the prosecution of these actions was not timely made.

## APPEAL AT 01149 PITTSBURGH 1986

Today we determine the validity of the trial court's order assessing against Appellant counsel fees and costs, expended by the County of Cambria, for Appellant's court-appointed representation.

The record reveals that Appellant retained private counsel after being arrested and charged with the crimes of which he was ultimately convicted. However, before trial commenced, counsel-for-Appellant filed a Motion for Leave to Withdraw Appearance as Counsel for Defendant insofar as Appellant had failed to pay the legal fees and expenses ʽ

associated with his defense. Following a hearing on this issue, the trial court granted this motion.

By Order of Court, Appellant was later afforded court-appointed counsel, although the Public Defender's Office had declined to grant Appellant indigent status. Included in that Order was the provision that "the Court will make a determination as to whether or not the costs of such representation can be assessed against John Verilla". (Order of Court, 3/4/84). Subsequent to sentencing, a hearing was conducted to resolve this question. The result of this proceeding was to assess counsel fees and costs against Appellant. For the following reasons, we reverse.

■ Initially, we note that it was within the trial court's discretion to provide Appellant with court-appointed counsel. The source of such power originates from Pa.R. Crim.P., Rule 316(c)(i). Pursuant to subsection (c)(i), a trial judge may assign counsel, regardless of indigency, where in his/her opinion, the interests of justice require it. *See* Comment to Pa.R.Crim.P., Rule 316. However, Rule 316 provides simply for the assignment of counsel; it has no provisions authorizing the court to order payment of fees.

The court, by its Order, admittedly cites no derivative authority by which it could assess counsel fees against Appellant. The record divulges that the reimbursement order was based largely upon the trial court's interpretation of *In re Estate of Damario*, 488 Pa. 434, 412 A.2d 842 (1980). (N.T., 6/26/86, 7). In that case, our Supreme Court upheld an orphans' court's decision requiring the guardian of an incompetent's estate to reimburse the Court of Berks County for costs incurred for the incompetent's defense in a murder prosecution. *Id.* at 488 Pa. at 439, 412 A.2d at 845. We find *Damario* to be inapposite to the instant case inasmuch as it involved the exercise of a broad grant of equitable authority which was vested in the orphans' court. *Id.* at 488 Pa. at 439, 412 A.2d at 844–845. Moreover, our Supreme Court distinguished the facts in *Damario* from those circumstances similar to the case at bar:

> [w]hile there are cases which have invalidated orders for reimbursement for lack of express statutory authority, ... those orders were entered by sentencing courts and are therefore inapposite here. The case before us involves a separate civil action instituted by the county, brought before the orphans' court having broad jurisdiction over Damario's estate.

*Id.* at 488 Pa. at 437–438, n. 3, 412 A.2d at 844, n. 3. Clearly, *Damario* cannot be construed to permit assessment of counsel fees by a trial court simply because Appellant was assigned court-appointed counsel, even though he was not ruled indigent.

Notwithstanding the fact that there exists no case law addressing the precise issue presently before this Court, we draw support from those cases which require a finding of statutory authority before the trial court's order of reimbursement to a public defender's office would be upheld. *See Commonwealth v. Terry,* 470 Pa. 234, 368 A.2d 279 (1977); *Commonwealth v. Pride,* 252 Pa.Super. 34, 380 A.2d 1267 (1977); *Commonwealth v. Opara,* 240 Pa.Super. 511, 362 A.2d 305 (1975).

■ Absent an indication by our legislature sanctioning the assessment of counsel fees for court-appointed counsel, we decline to validate orders granting such relief to counties. Parenthetically we note that § 3 of the Act of January 19, 1968, P.L. 984, 19 P.S. § 793, at one time provided for the reimbursement by a criminal defendant or a relative of the defendant to the county "for compensation and expense incurred and paid to court-appointed counsel". However, this statute has since been repealed, 1984, October 12, P.L. 959, No. 187, § 6.

Appeal at 952 Pittsburgh 1986, Judgment of Sentence for first degree murder affirmed. Judgment of Sentence for kidnapping, conspiracy to commit murder and conspiracy to commit kidnapping vacated. Jurisdiction relinquished.

Appeal at 1149 Pittsburgh 1986, order reversed. Jurisdiction relinquished.